UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>LAS AMERICAS BROADBAND, INC.<br><br>       Debtor.<br><br>_____/ | Case No. 05-11397-A-11K<br>DC No. JTH-1<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING APPLICATION FOR ALLOWANCE OF INTERIM ATTORNEY FEES AND COSTS FILED BY JOHN T. HEANEY, SPECIAL COUNSEL FOR DEBTOR |

    A hearing was held February 22, 2006, on the First Application for Allowance of Interim Attorney Fees and Costs of John T. Heaney, special counsel for debtor. Opposition to the application was filed by the Creditors' Committee, and the chapter 11 trustee joined in the Committee's opposition. Following the hearing, the court took the matter under submission. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (O).

<u>Background Facts.</u>

    The debtor filed this chapter 11 case on February 28, 2005. On June 1, 2005, an order was entered authorizing the employment of Heaney as special counsel to continue his joint representation of the debtor and Dick Clark International Cable Ventures, LTD. ("DCICV") in state court litigation against U.S.A. Broadband,

Inc. ("USAB") and other defendants.  The order authorizing Heaney's employment stated that the employment was on the terms and conditions set forth in a Fee Agreement dated September 22, 2003, as amended (the "Fee Agreement") between Heaney and the debtor and DCICV.

    The Fee Agreement provides for a reduced hourly rate of $150 per hour, which is one-half of Heaney's customary hourly rate. The hourly fees and costs were to have been billed and paid monthly.  Additionally, the Fee Agreement provides that Heaney will receive a contingent fee of 25% of any settlement, judgment, or other recovery collected.  The Fee Agreement also provides for an attorney's lien against any proceeds recovered for the contingent fee and any otherwise unpaid hourly fees and costs.

    In December 2005, this court approved a settlement with one of the defendants in the state court action.  That settlement resulted in plaintiffs' receiving the total amount of remaining policy limits of two insurance policies covering the settling defendant, Grant Miller, in the amount of $3,148,217.34.  In accordance with the terms of the Fee Agreement and the order authorizing his employment, Heaney seeks allowance of contingent fees based on the settlement of $787,054.34, together with his reduced hourly fees through December 31, 2005, of $141,840.34, and unreimbursed costs advanced through December 31, 2005, of $23,281.47.

    As of February 28, 2005, when the debtor filed its chapter 11 case, the accumulated unpaid portion of Heaney's bills for his reduced hourly charges was $88,125.40, together with $15,843.87 for costs advanced, mainly deposition reporter's fees, expert

witness fees, and the like.

The State Court Action.

The state court action is summarized in the application. In the early 1990's, the debtor and DCICV obtained from the Mexican government a concession to develop a cable television system in the city of Tijuana, Mexico. Commencement of the project was delayed for about six years because of litigation filed by other Mexican cable television providers. However, by the end of 2001, the debtor and DCICV, at a cost of over $8,000,000, had completed construction of the basic infrastructure of the system and brought it online. Their business plan then required additional capital to expand the system to profitability or to break even. Thus, they entered into an asset purchase agreement with USAB. Pursuant to that agreement, the debtor and DCICV transferred all their rights and interests in the Tijuana project to USAB in exchange for shares of stock. Unfortunately, USAB failed to perform, and eventually went out of business. This led to the litigation filed against USAB and individual defendants, including Grant Miller and Paul Moore by the debtor and DCICV.

Heaney was first consulted about the dispute on August 11, 2003. He originally proposed representing the debtor and DCICV at his standard hourly rate of $300 per hour. The debtor and DCICV then suggested that he undertake the representation on a purely contingent fee basis in the amount of 40% of any recovery plus costs advanced. Heaney was concerned that this would create impossible cash flow problems for his practice, and therefore the parties agreed to the hybrid fee arrangement. However, despite the promise of the debtor and DCICV to pay him fees and costs

each month in the reduced hourly rate of $150 per hour, in fact payments were not made as promised. The last payment made to him for fees and costs was $5,100 received in June 2004.

In December 2003, Heaney filed two separate lawsuits against USAB and individual defendants in San Diego County Superior Court. The defendants then filed a lawsuit in Delaware. Thus, plaintiffs had to battle the enforceability of a choice of law and forum selection clause in the asset purchase agreement. Plaintiffs prevailed, and the San Diego actions proceeded. The Delaware action was stayed and eventually dismissed. USAB then went out of business, and its attorneys withdrew. The focus of the litigation shifted to the remaining individual defendants. The defendant that has settled, Grant Miller, was covered by two policies of insurance purchased by USAB for its officers and directors. The primary policy was of the self-liquidating type, whereby the insured's costs of defense were subtracted dollar for dollar from the remaining policy limits. Between July 2004 and the eventual settlement, defense counsel for Miller consumed over $850,000 of his coverage.

Extensive discovery commenced in the spring of 2004. Heaney successfully opposed a motion for summary judgment filed by Grant Miller. In October 2005, a settlement was achieved with Grant Miller, whereby his insurance carriers agreed to pay the total amount of remaining policy limits. That amount, $3,148,217.34, is now in Heaney's client trust account.

Since the hearing on this application, the chapter 11 trustee has filed a motion to approve a settlement with Moore, MBC, and USAB. That settlement adds $300,000 to the proceeds of

the litigation.  That settlement also results in stock and a note being returned to the plaintiffs.  Further, the trustee has filed a motion to approve a settlement of the division of the proceeds of the litigation between the debtor and DCICV.  The settlement that the trustee will ask the court to approve is a division of forth-five percent of the proceeds to DCICV and fifty-five percent of the proceeds to the bankruptcy estate.

<u>The Opposition by the Committee and the Trustee.</u>

The Committee's opposition, in which the trustee joined,[1] asserts that it is premature to award any fees to Heaney.  According to the Committee, the various claims of liens against the proceeds need to be determined before any payment to Heaney.[2] Second, the Committee believes that the proceeds must be allocated between DCICV and the debtor before determining Heaney's payment.  According to the Committee, it is possible "depending upon the allocation of the Settlement Payment that Heaney's services would yield no benefit to the estate herein whatsoever."  The Committee says that it is necessary to apply the lodestar approach to Heaney's fee application.  The lodestar approach divides the total fees requested by the number of hours spent.  If you use the lodestar approach, his hourly rate is

---

[1] On March 17, 2005, the chapter 11 trustee filed a withdrawal of his joinder in the objection by the Creditors' Committee to this application.

[2] The trustee's motion for approval of the division of the litigation proceeds between the debtor and DCICV describes the notices of lien that have been filed in the litigation.  The motion also states that other creditors may claim a lien on the proceeds.  The trustee takes the position that some of the liens are avoidable.

$794.75, which the Committee asserts is unreasonable.

According to the Committee, it is possible that the estate will prove to have not benefitted at all by the work performed by Heaney, if, as a result of the eventual allocation between the debtor and DCICV, combined with the amount of liens against the proceeds, there are no funds left to pay unsecured creditors and administrative priority claims.

Finally, the Committee says that there is no legal basis for this court to award the prepetition fees and costs of $103,969.27 to Heaney. They attorney's lien asserted by Heaney does not affect this result, according to the Committee. That is because, according to the Committee, the attorney's lien was not disclosed in the application to employ Heaney.

Heaney on the other hand argues that the court approved his employment with specific reference to the fee agreement, and the fee agreement gives him an attorney's lien.

<u>The Issues for the Court to Decide.</u>

Although this is an interim fee application under 11 U.S.C. § 331, by its very nature it asks the court to make determinations of reasonableness and benefit to the estate pursuant to 11 U.S.C. § 330. Thus, the court must decide whether the services of Heaney benefitted the estate. Second, the court must determine if the attorney's lien asserted by Heaney is enforceable in the context of this bankruptcy case. Third, it is necessary to analyze the question of the prepetition fees incurred by Heaney and whether it is appropriate to award them in this administrative expense claim.

In support of its analysis, the court turns first to 11

U.S.C. § 330(a). The prior October 2005 version of § 330(a) is, as all parties acknowledge, applicable to this case. That section provides, in relevant part, as provides:

> ". . . In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> . . .
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

As the Committee has noted, a professional seeking compensation has the burden to prove the reasonableness of his or her fees. In determining the reasonableness of a fee request, a court is to exercise its discretion after considering all relevant factors.

<u>Benefit to the Estate.</u>

The benefit to the estate of Heaney's services is unquestionable. It is true that it will be necessary to allocate the settlement proceeds between the two plaintiffs, and the debtor will likely not be entitled to all the proceeds. It is also true that lien claims against the settlement amount will need to be resolved. But, absent the services performed by Heaney, there would be no settlement amount to divide between the plaintiffs and there would be no settlement amount to which claims of lien could attach. The fees sought by Heaney are less than the fees incurred by the defendants. If Heaney were to be paid today on the totally contingent fee basis he was initially

offered, his application would be more than $300,000 above the present application. As counsel for the debtor observed at oral argument on the application, by his efforts, Heaney obtained a result akin to creating a silk purse of the proverbial sow's ear.

The state court action was legally and factually complex. It required lengthy discovery and motions on venue and summary judgment. The eventual recovery was the policy limits of the only defendant covered by insurance. The corporate defendant is out of business, and the remaining individual defendant is not covered by any insurance. Thus, the magnitude of the recovery is all that could reasonably be obtained.

No one has challenged Heaney's skill and experience. Similarly, no one has challenged the quality of the representation. At every significant juncture, he succeeded in prevailing on behalf of the plaintiffs.

There was substantial risk of nonpayment. The substantial risk of nonpayment is, after all, the heart and sole of a contingent fee arrangement. Here, absent a settlement or a judgment, there would be no funds from which to pay the 25% contingent fee amount. The time requirements of this litigation precluded Heaney from undertaking work for other clients. The standard contingent fee arrangement for this type of litigation is 40%, not the 25% currently being sought.

The fact that the proceeds had not been allocated at the time of the hearing does not affect the benefit to the estate. The court does not find persuasive the Committee's argument that it is first necessary to allocate the proceeds between the plaintiffs before awarding any fees to Heaney. Once Heaney's

fees are subtracted from the settlement amount, and the remaining proceeds are allocated between the plaintiffs, each plaintiff will necessarily bear a pro rata share of the fees and costs of Heaney. Similarly, the Committee's argument that there is no benefit to the estate before liens against the proceeds are determined is not persuasive. The fact is, there are funds from which these liens can be paid if the liens are not avoided. This is in and of itself a benefit to the estate.

Further, the court has concluded that the attorney's lien against the proceeds is enforceable. In California, an attorney's charging lien can be created by express contract. Witkins California Procedure Attorneys Section 193 (Lexis 2005); <u>Saltarelli & Steponovich v. Douglas</u>, 40 Cal. App. 4th 1, 6 (Cal. Ct. App. 1995). The language of the written fee agreement of September 22, 2003 here does create such a lien. Nothing further is required to perfect the lien. It is in essence a "secret" lien. <u>In re Bouzas</u>, 294 B.R. 318, 322 (Bankr. N.D. Cal. 2003). The Ninth Circuit has recognized that this attorney's charging lien survives in bankruptcy even if the case was settled just after the bankruptcy filing. <u>In re Pacific Far East Line, Inc.</u>, 654 F.2d 664 ((9th Cir. 1981)(decided under Chapter XI of the former Bankruptcy Act).

Due to the attorney's lien, the court need not consider whether the hourly fees and costs incurred prior to the bankruptcy case are simply an unsecured claim that does not have an administrative expense priority.

For all the foregoing reasons, the application will be approved. Applicant may submit an appropriate form of order

1 | consistent herewith.
2 | DATED: March 21, 2006.

_____
WHITNEY RIMEL, Judge
United States Bankruptcy Court

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF FRESNO         )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On March 21, 2006, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Hilton A. Ryder, Esq.
McCormick, Barstow, Sheppard,
    Wayte & Carruth
P. O. Box 28912
Fresno, California 93729-8912

John T. Heaney, Esq.
1900 Avenue of the Stars, 25th Floor
Los Angeles, California 90067-4506

Leonard Welsh, Esq.
KLEIN, DeNATALE, GOLDNER, COOPER,
  ROSENLIEB & KIMBALL
4550 California Ave., Floor 2
P. O. Box 11172
Bakersfield, California 93389-1172

David L. Neale, Esq.
LEVENE, NEALE, BENDER, RANKIN & BRILL
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067

Randell Parker
3820 Herring Road
Arvin, California 93203

Office of the United States Trustee
2500 Tulare Street
Suite 1401
Fresno, California 93721

I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on March 21, 2006, at Fresno, California.

_____
Kathy Torres, PLS